UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEONEL S. MEDEIROS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. <br> 18-11326-FDS |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

SAYLOR, J.

This is an appeal of a final decision of the Commissioner of the Social Security Administration ("SSA"). On April 5, 2017, the Administrative Law Judge ("ALJ") issued a decision concluding that plaintiff Leonel Medeiros is not disabled. The SSA Appeals Council declined review on April 24, 2018. Plaintiff then filed an action with this Court.

Plaintiff seeks reversal of the Commissioner's decision on two grounds. The Commissioner has moved to affirm the decision. For the reasons stated below, the decision will be affirmed.

**I.    Background**

   **A.    Factual Background**

      **1.    Personal History**

Leonel Medeiros is 50 years old. He was born in Portugal, where he lived until age 16. (A.R. 24). He attended school in Portugal and went to night school in New Bedford upon his arrival to the United States to learn English. (A.R. 25). He lives in Acushnet, Massachusetts,

with his wife and two children. (A.R. 31). He last worked in June 2009 as a landscaper; his responsibilities included planting, spreading loam, and constructing stone, brick, and concrete walls. (A.R. 26).

Medeiros spends time completing chores such as vacuuming and putting away clothes, but reports that he always experiences severe pain after he does so. (A.R. 32). He occasionally walks to the bus stop to meet his children after school or goes to the mall to walk for 20 to 30 minutes. (A.R. 33-34). He reports that walking hurts his back and he has to sit down for 10 to 15 minutes afterward. (A.R. 34). He occasionally uses the computer, and sometimes helps his wife with cooking tasks, such as peeling potatoes, while sitting down. (A.R. 37-38).

### 2. **Medical History**

#### a. **Spinal Issues**

Medeiros suffered an injury at work in August 2008 when he attempted to pick up heavy piping. (A.R. 29, 230). He felt a pop in his lower back and was immediately in pain and unable to stand. (A.R. 230, 440).

An MRI on November 19, 2008, revealed degenerative disc disease at L5-S1 with broad subligamentous disc protrusion. (A.R. 595-96). He initially underwent conservative treatment, such as epidural steroid injections and physical therapy. (A.R. 440). The treatment failed, however, to relieve his pain.

On October 28, 2010, Medeiros was evaluated by nurse practitioner Julie Welch. (A.R. 288-89). She noted that his symptoms had worsened in the two years since the injury and stated that his surgeon, Dr. Pedlow, recommended a transforaminal lumbar interbody fusion at the L5-S1 level. (A.R. 289). She evaluated him again on February 10, 2011, in preparation for the surgery, and noted that the procedure had been postponed because he had an upper-respiratory infection. (A.R. 441).

On February 23, 2011, Medeiros underwent bilateral L4-5 foraminotomies with transforaminal lumbar interbody fusion surgery. (A.R. 294).

Medeiros testified that he continued to experience back pain after his surgery. (A.R. 29). Nurse Welch evaluated him again on March 8, 2011, after the operation, and noted that his nerve pain had improved, but he was still experiencing tingling in his leg and stiffness in his back. (A.R. 497). On April 12, 2011, she evaluated him again, and found that he had some recurrence of nerve pain but not as bad as prior to the operation. (A.R. 498).

At various medical appointments up to December 2012, Medeiros reported that his pain had worsened since the surgery, increased while sitting or driving, prevented him from completing household chores, and did not respond to physical therapy. (*See, e.g.* A.R. 465, 528, 676).

On January 30, 2013, Medeiros underwent surgery at Massachusetts General Hospital to remove the hardware that had been put in his lower back during the 2011 surgery. (A.R. 1114-17).

Following the surgery, Medeiros was seen by various medical providers at Southcoast Physicians Network Pain Center. (A.R. 1149-1205). He began seeing Dr. Allison Gorski in June 2013 at Southcoast Health for management of his lower back pain and continued to see her through May 2014. (A.R. 1184). Dr. Gorski noted that he reported continuous, stabbing pain in his lower back. (A.R. 1172, 1178, 1181, 1184).

On May 2, 2014, Dr. Gorski noted that his pain had improved after use of the Duragesic patch but continued to be aggravated by activity. (A.R. 1149). Medeiros reported experiencing continuous, sharp pain that was slightly improved by medications and rest and aggravated by activity and walking. (A.R. 1157). He used Tramadol, non-steroidal anti-inflammatories, and

3

narcotics at various points to treat his pain. (*Id*.). He also received epidural steroid injections, which reduced his pain for one week. (*Id*.). He did not experience side effects from the medication. (*Id*.).

### b. Mental Health Issues

Medeiros was seen at Arbour Counseling Services approximately once every other month between August 2013 and March 2016. (A.R. 1149-1244, 1252-1302, 1363-77). His medical records note that he suffered from anxiety and depression as a result of his inability to work and that he took Wellbutrin to treat his symptoms. (*Id*.).

On March 27, 2015, Dr. Don Whitworth, a licensed psychologist, evaluated Medeiros. (A.R. 1245-50). Dr. Whitworth noted that he had symptoms consistent with major depressive disorder. (A.R. 1250).

### c. Disability Evaluations

On September 23, 2009, Medeiros was evaluated by Dr. David Winnick. (A.R. 679-82). Dr. Winnick noted that he was "cautiously optimistic" that Medeiros could make a full recovery. (A.R. 682). He concluded that Medeiros was "temporarily, partially disabled," but could work full-time. (*Id*.).

On March 24, 2010, Dr. Gilbert Shapiro examined Medeiros for an independent medical evaluation. (A.R. 688-90). He concluded that Medeiros had "light duty capacity" and full use of his arms. (A.R. 690). He noted that Medeiros would be unable to return to his former occupation of landscaping. (*Id*.).

On July 21, 2011, Dr. Robert McGuffin completed a disability determination examination for Medeiros. (A.R. 59-67). He concluded that Medeiros could frequently lift up to ten pounds, climb stairs and ramps, and balance, and occasionally lift up to twenty pounds, climb ladders, ropes, or scaffolds, and stoop or crawl. (A.R. 64). In addition, he determined that Medeiros

4

could sit for six hours and stand or walk for six hours in an eight-hour workday. (*Id*.).

On January 5, 2012, Dr. Stephanie Green completed a disability determination examination for Medeiros. (A.R. 69-77). She concluded that Medeiros could frequently lift up to ten pounds and occasionally lift up to twenty pounds, climb, balance, stoop, kneel, crouch, or crawl. (A.R. 74-75). In addition, she determined that Medeiros could sit for six hours and stand or walk for six hours in an eight-hour workday. (A.R. 74).

On April 10, 2015, Dr. Henry Astarjian completed a disability determination examination for Medeiros. (A.R. 792-809). He concluded that Medeiros could frequently lift up to ten pounds and balance or kneel, and that he could occasionally lift up to twenty pounds, climb stairs or ramps, crouch, stoop, or crawl. (A.R. 804-05). He also found that Medeiros could never climb ladders, ropes, or scaffolds. (A.R. 804). In addition, he determined that Medeiros could sit for six hours and stand or walk for four hours in an eight-hour workday. (*Id*.).

On June 17, 2015, Dr. John Jao completed a disability determination examination for Medeiros. (A.R. 811-27). He concluded that Medeiros could frequently lift up to ten pounds and balance or kneel, and that he could occasionally lift up to twenty pounds, climb stairs or ramps, crouch, stoop, or crawl. (A.R. 821-22). He also found that Medeiros could never climb ladders, ropes, or scaffolds. (A.R. 822). In addition, he determined that Medeiros could sit for six hours and stand or walk for four hours in an eight-hour workday. (*Id*.).

## II. **Procedural History**

Medeiros filed a claim for disability benefits on January 18, 2011, alleging disability beginning June 8, 2009. (A.R. 129-32). The SSA denied his application on August 16, 2011, and again after reconsideration on January 5, 2012. (A.R. 58, 97-99). On March 6, 2012, he requested a hearing, which was held on June 7, 2013. (A.R. 19-49, 100-06). On June 28, 2013, the ALJ found him to be not disabled. (A.R. 17).

Medeiros requested a review of the ALJ's decision. (A.R. 5). On July 24, 2014, the Appeals Council declined to review the decision and adopted it as the final decision of the Commissioner. (A.R. 1-3).

Medeiros filed an appeal in this court on March 25, 2015. (A.R. 790-91). On March 27, 2015, Judge Young remanded the case to the Social Security Administration. (A.R. 789). On June 26, 2015, the Appeals Council remanded the case to the ALJ with instructions to address certain issues in the rehearing. (A.R. 929-33).[1]

The hearing took place on January 5, 2017. (A.R. 714). On April 5, 2017, the ALJ again denied the application. (A.R. 737).[2] The Appeals Council denied his appeal on April 24, 2018, and Medeiros appealed to this court. (A.R. 702).

## III. Analysis

### A. Standard of Review

Under § 205(g) of the Social Security Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The ALJ's finding on any fact shall be conclusive if it is supported by "substantial evidence," and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," even if the record could justify a different conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[1] Medeiros had apparently filed a separate claim for disability benefits on December 2, 2014, that alleged disability beginning June 29, 2013. (A.R. 832). The claim appears to have been denied by the SSA initially and upon reconsideration. (*Id.*). In its June 26, 2015, order remanding Medeiros's earlier claim, the Appeals Council stated that its order "render[ed]" his "subsequent claim duplicate," and accordingly ordered the ALJ to "consolidate the claims, create a single record, and issue a new decision on the consolidated claims." (*Id.*).

[2] In his decision denying Medeiros's application, the ALJ stated that he had consolidated Medeiros's two claims "pursuant to the remand order of the Appeals Council." (A.R. 727).

In applying the "substantial evidence" standard, the court must bear in mind that it is the province of the ALJ, not the courts, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence. *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Reversal is warranted only if the ALJ committed a legal or factual error in evaluating the claim, or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ. *Roman-Roman v. Comm'r of Soc. Sec.*, 114 F. App'x 410, 411 (1st Cir. 2004); *see also Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). Therefore, "[j]udicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts based on the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).

**B.      Standard for Entitlement to Disability Benefits**

In order to qualify for SSI benefits, the claimant must demonstrate that he or she is "disabled" within the meaning of the Social Security Act. The Social Security Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to prevent the claimant from performing not only his or her past work, but also any substantial gainful work existing in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1).

An applicant's impairment is evaluated under a five-step analysis set forth in the regulations promulgated under the statute. *See* 20 C.F.R. § 404.1520. The First Circuit has described the analytical sequence as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

> Second, does the claimant have a severe impairment . . . mean[ing] an impairment 'which significantly limits his or her physical or mental capacity to perform basic work-related functions[?]' If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in . . . Appendix 1 [of the Social Security regulations]? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled. . . . If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no 'Appendix 1' impairment (test 3), the [ALJ] goes on to ask the fourth question:
>
> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

The burden of proof is on the applicant as to the first four inquiries. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require."). If the applicant has met his or her burden as to the first four inquiries, then the burden shifts to the Commissioner to present "evidence of specific jobs in that national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). In determining whether the applicant is capable of performing other work in the economy, the ALJ must assess the applicant's residual functional capacity ("RFC") in combination with vocational factors, including the applicant's age, education, and work experience. 20 C.F.R. § 404.1560(c).

### C. The ALJ's Findings

In evaluating the evidence for disability, the ALJ conducted the five-part analysis called for by Social Security Act regulations.

At step one, the ALJ found that Medeiros had not engaged in substantial gainful activity

during the period since his alleged onset date of June 8, 2009, through his date last insured of December 31, 2014. (A.R. 716).

At step two, the ALJ found that degenerative disc disease of the lumbar spine, status post transforaminal lumbar interbody fusion at L5-S1, status post hardware removal surgery, anxiety disorder, and depressive disorder were severe impairments. (A.R. 717). He found that mild mitral valve regurgitation, gastroesophageal reflux disease, and obstructive sleep apnea were not severe impairments. (*Id*.).

At step three, the ALJ found that Medeiros did not have an impairment or combination of impairments that met, medically equalled, or functionally equalled the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id*.). The ALJ evaluated his impairments under listings 1.04 (disorders of the spine), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (A.R. 718). The ALJ found that Medeiros had moderate limitations in two of the "paragraph B" criteria for mental impairments (B1: understanding, remembering, or applying information; B3: concentrating, persisting, or maintaining pace) and mild limitations in the two remaining criteria (B2: interacting with others; B4: adapting or managing oneself). (*Id*.). He also found that Medeiros did not have marked or extreme limitations in any of the "paragraph B" criteria, as shown by his ability to read books, complete chores, attend medical appointments, spend time with friends and family, and drive. (*Id*.). In addition, he found that the mental impairments did not satisfy the "paragraph C" criteria. (A.R. 719).

At step four, the ALJ found that Medeiros was unable to perform any past relevant work. (A.R. 736).

At step five, the ALJ found that Medeiros had the RFC to perform light work and had the

9

ability to frequently climb stairs or ramps, balance, and kneel. (A.R. 719). He could occasionally climb ladders, stoop, and crouch. (*Id.*). He could never crawl and needed to avoid exposure to unprotected heights and dangerous machinery. (*Id.*). He could drive a motor vehicle and maintain persistence in unskilled work for two-hour increments over an eight-hour workday. (*Id.*).

In considering Medeiros's symptoms, the ALJ followed a two-step process. In step one, the ALJ found that his medical impairments could be reasonably expected to produce the pain and physical symptoms that he claimed. (A.R. 732).

In step two, the ALJ evaluated how the intensity, persistence, and limiting effects of the symptoms limited Medeiros's work-related activity. (A.R. 720). The ALJ found that his claims concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with the evidence in the record and were therefore not credible. (A.R. 732). The ALJ found that the record "reflects no evidence of psychiatric hospitalization, episodes of decompensation, or suicidal ideation," but rather shows that Medeiros has managed his mental health symptoms with appropriate treatment. (A.R. 735). As for his physical symptoms, the ALJ found that the record showed his "treatment has been at least partially successful at helping to reduce his physical pain and limitations" and noted "a generally effective regimen of pain control, including the use of Fentanyl patches and pain medication." (*Id.*). He also found that the record showed no evidence of detrimental side effects from prescribed medication and that Medeiros participated in daily activities that are inconsistent with his disability allegations. (*Id.*).

In reaching that conclusion, the ALJ gave great weight to the testimony of Dr. Kwock, an expert in orthopedic surgery who reviewed Medeiros's medical records. (A.R. 733). Dr. Kwock's opinion was consistent with the record and the ALJ found him to be "in a strong

10

position to evaluate the claimant's work-related abilities and limitations." (*Id.*). The ALJ gave partial weight to the assessments of Dr. McGuffin, Dr. Green, Dr. Astarjian, and Dr. Jao, whose assessments were mostly consistent with the record. (A.R. 732). The ALJ gave little weight to the opinions of Dr. Winnick and Dr. Shapiro because their "opinion[s] [were] proffered in the setting of an adversarial legal proceeding – a worker's compensation claim," and their assessments were completed prior to Medeiros's first surgery. (A.R. 733). He also gave little weight to the opinion of Dr. Gorsky because his opinion was inconsistent with Medeiros's "history of good response to medical treatment, … objective examination findings throughout the record, … [and] reported activities of daily living." (A.R. 734). In addition, he gave little weight to the opinions of nurse Welch, who he found to be an unacceptable medical source, and Lucia Medeiros, Medeiros's wife, because her opinion would "tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." (A.R. 733-34). As for Medeiros's mental-health symptoms, he gave little weight to Dr. Whitworth's opinion, which he deemed inconsistent with the record. (A.R. 735).

The ALJ concluded that considering Medeiros's RFC, age, education, and work experience, there were a significant number of jobs in the national economy that he could perform. (A.R. 736). He relied on the testimony of the vocational expert that someone with Medeiros's characteristics could work in representative occupations such as hand packager/inspector, price marker, or electrical assembler. (A.R. 737).

In summary, the ALJ found that Medeiros did not suffer from a disability between the alleged onset date of June 8, 2009, through his date last insured of December 31, 2014, under §§ 223(d) and 1614(a)(3)(A) of the Social Security Act. (A.R. 33).

### D.  **Plaintiff's Objections**

Medeiros raises two objections to the ALJ's decision.

11

1. **Whether the ALJ Ignored or Misconstrued Evidence**

First, Medeiros appears to contend that the ALJ "ignor[ed] and misconstru[ed] evidence." (Pl.'s Mem. in Supp. of Mot. to Rev. at 7).

As to his claim that the ALJ ignored evidence, Medeiros does not state what specific medical records were ignored. Instead, in a section of his motion entitled "medical evidence," Medeiros simply provides a list of evidence concerning his medical history. (*Id.* at 8). All of that evidence, however, was specifically addressed by the ALJ in his decision, with the exception of one medical appointment on December 11, 2009. (*Compare Id*. at 8-10 *with* A.R. 720-32).[3]

In any event, an ALJ is not required to discuss every piece of evidence in the record when making his decision. *Sousa v. Astrue*, 783 F. Supp. 2d 226, 234 (D. Mass. 2011) ("The hearing officer is not required to—nor could he reasonably—discuss every piece of evidence in the record."). The fact that the ALJ did not discuss one of Medeiros' medical appointments is therefore not grounds for reversal.

As to his contention that the ALJ misconstrued evidence, Medeiros makes a number of conclusory statements. First, he states that the ALJ "overstated the extent to which [he] benefitted from surgery, treatment and medication." (Pl.'s Mem. at 7). Second, he states that the ALJ "cherry-picked statements from various medical records in an attempt to show that [Medeiros'] condition had continue[d] to improve . . ." (*Id.*). Third, and finally, he states that "contrary to the ALJ's findings," his "level of activity" "decreased over time or produced greater pain due to his physical limitation." (*Id.* at 8).

Medeiros provides no support or record citations for any of those contentions. In any

---

[3] At that appointment, Medeiros reported that the steroid injection that he had received to treat his pain ten days prior had worn off. (A.R. 272).

12

event, however, the contentions at most amount to allegations that some of the ALJ's conclusions were wrong. That is not enough to warrant reversal. An ALJ's conclusion must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [it]," even if the record could justify a different conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

Accordingly, because Medeiros has not shown that the record—taken as a whole—does not adequately support the ALJ's conclusions, the decision will not be reversed as to this ground.

### 2. Whether the ALJ Gave Improper Weight to Non-Treating Source Opinions

Medeiros further contends that the ALJ "based his decision on [the] medical opinion [of Dr. Kwock,] which did not consider . . . the effect of [his] pain on his functional capacity and the effect of medications on his functional abilities." (Pl.'s Mem. at 12). He contends that the ALJ should not have given Dr. Kwock's opinion significant weight because he was not a treating or examining physician. (*Id*. at 10-11).

In making a disability determination, the ALJ will give the opinion of a treating source controlling weight if "the treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Conte v. McMahon*, 472 F. Supp. 2d 39, 48 (D. Mass. 2007); 20 C.F.R. § 404.1527(c)(2). To be inconsistent, evidence need only "be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." SSR 96-2p, 1996 WL 374188, at *3. Nevertheless, "the law in this circuit does not require [an ALJ] to give greater weight to the opinions of treating physicians, as she is granted discretion to resolve any evidentiary conflicts of inconsistencies." *Hughes v. Colvin*, 2014 WL

1334170, at *8 (D. Mass. Mar. 28, 2014) (quoting *Arroyo v. Sec'y of Health & Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991)).

When a treating source's opinion is not given controlling weight, the ALJ must determine the amount of weight to give the opinion, based on factors that include (1) the length of the treatment relationship; (2) whether the treating source provided evidence in support of the opinion; (3) whether the opinion is consistent with the record as a whole; and (4) whether the treating source is a specialist. 20 C.F.R. § 404.1527(c); see also SSR 96-2p, 1996 WL 374188 (July 2, 1996). Opinions that a claimant is "disabled or unable to work" are legal conclusions "reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d)(1). The hearing officer is required, however, to provide "good reasons" for deciding to give the treating source's opinion the weight he did and must state "specific reasons for the weight given to the treating source's medical opinion . . . and must be sufficiently specific to make [it] clear to any subsequent reviewers." SSR 96-2p, 1996 WL 374188, at *5; *see also, e.g., Shields v. Astrue*, 2011 WL 1233105, at *8 (D. Mass. Mar. 30, 2011) (Dein, M.J.) ("Because the [hearing officer] supported his rejection of the treating physician's opinions with express references to specific inconsistencies between the opinions and the record, [his] decision not to grant [the treating physician's] opinions significant probative weight was not improper.").

Here, the ALJ gave little weight to the opinions of the treating physicians, and significant weight to that of Dr. Kwock, the expert who testified at the hearing. (A.R. 733). Because the ALJ found the opinions of the treating physicians inconsistent with the record, he was not required to give their opinions controlling weight and could instead assign significant weight to Dr. Kwock's opinion. *See Hughes*, 2014 WL 1334170, at *8.

14

The ALJ was permitted to rely on Dr. Kwock's opinion and justify his evaluation with evidence from the record. Dr. Kwock testified that he was a board-certified orthopedic surgeon, that he had reviewed all the evidence, and that he had listened to Medeiros's hearing testimony. (A.R. 756, 759). The ALJ found that Dr. Kwock's opinion was consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ cited evidence from the record to show such consistency, such as Medeiros's normal muscle strength and tone, painless range of motion in upper extremities, ability to balance on each leg, lack of lower extremity issues, and ability to go for walks and exercise. (A.R. 718, 720, 724, 726 referring to 231, 253, 1151, 1185, 1248).

In addition, the ALJ noted that Dr. Kwock is an expert in surgeries such as the ones Medeiros received. (A.R. 733 referring to 756, 1097-99). 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about the medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

Finally, Dr. Kwock's testimony was supported by medical evidence in the record. 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). In his testimony, Dr. Kwock stated that his "opinion is based on the review of the record . . . I had heavily relied upon . . . complete office examinations and the findings on those physical examinations and a series of radiological studies that have been done on [Medeiros]." (A.R. 760).

It is the province of the ALJ to make determinations of credibility and decide conflicts of evidence, and here, the ALJ's determination is sufficiently supported by the record. *Ortiz.*, 955

F.2d at 769.

## IV. Conclusion

For the foregoing reasons, defendant's motion to affirm the decision of the Commissioner is GRANTED.

**So Ordered.**

                                                /s/ F. Dennis Saylor IV
                                                F. Dennis Saylor IV
Dated: August 12, 2019                    United States District Judge